IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02534–CMA–KMT

KEITH FRAZIER,

      Plaintiff,

v.

ARISTEDES ZAVARAS, Executive Director, CDOC,
CELIA SCHWARTZ, Office of Correctional Legal Services, CDOC,
SUSAN BARKER, Librarian, BCCF,
JAN BRYANT, Assistant Warden, BCCF,
ERIN PHILLIPS, Grievance Coordinator, BCCF,
BRIGHAM SLOAN, Warden, BCCF,
ANTHONY DECESARO, Step 3 Grievance Coordinator, CDOC,
SERGIO LOPEZ, Case Manager, BCCF,
TRAVIS BRUBAKER, Private Prisons Monitoring Unit, CDOC,
TRUDI WHITEHOUSE, Private Prisons Monitoring Unite, CDOC,
CLAYTON SPANO, Sergeant, BCCF,
GERALD HOLCOMB, Correctional Officer, BCCF,
ROBERT ARAMBEL, Lieutenant, BCCF,
PAM KASEN, Assistant Librarian, BCCF,
STEVEN BROWN, SR., Investigator, BCCF,
LARRY COX, Chief of Security, BCCF,
CHRIS CHAVEZ, Unit 6 Manager, BCCF,
TIM SMELTZER, Private Prisons Monitoring Unit, CDOC,
DAVID BEEBE, Recreation Supervisor, BCCF,
WILLIAM MEDINA, Music Room Supervisor, BCCF,
COSMOS GALLEGOS, Program Manager, BCCF,
FOOD SERVICE MANAGER, CDOC, and
AUGGIE VARGAS, Food Service Supervisor, BCCF,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Magistrate Judge Kathleen M. Tafoya**

This case involves claims that Defendants violated Plaintiff's civil rights.  The matter comes before the court on "Defendants' Motion to Dismiss" (Doc. No. 17) and "CDOC Defendants' Motion to Dismiss" (Doc. No. 24).

## STATEMENT OF THE CASE

The following description is taken from Plaintiff's Complaint (Doc. No. 3 [Compl.]) and the parties' submissions with respect to this Recommendation.  At the time Plaintiff filed his Complaint, he was incarcerated at the Bent County Correctional Facility (BCCF) within the Colorado Department of Corrections (CDOC).  (*Id.* at 2.)  Though Plaintiff asserts two claims, it appears Plaintiff seeks relief for Defendants' alleged violation of right to access of the courts, Defendants' alleged retaliation against Plaintiff for filing formal complaints and lawsuits, Defendants' alleged violation of his right to be free from unreasonable searches and seizures, Defendants' alleged violation of Plaintiff's right to procedural due process, Defendants' alleged violations of Plaintiff's right to equal protection, and Defendants' failure to comply with CDOC policies.  (*See id.* at 3–20, 30–33.)  Plaintiff has sued all defendants in their official and individual capacities, seeking compensatory damages, punitive damages, and injunctive relief. (*Id.* at 34–36.)

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on October 18, 2010.  (Doc. No. 3.)  On February 14, 2011, Defendants Barker, Bryant, Sloan, Lopez, Spano, Holcomb, Arambel, Kasen, Brown, Cox,

Chavez, Beebe, Medina, Gallegos, and Vargas[1] filed a Motion to Dismiss[2] arguing that (1) the

defendants did not personally participate in the alleged constitutional violations; (2) the

defendants are entitled to qualified immunity on Plaintiff's claim for denial of access to the

courts; and (3) Plaintiff has failed to state a claim for an equal protection violation.  (Doc. No.

17.)

On February 28, 2011, Defendants Zavaras, DeCesaro, CDOC Food Services Manager

Ben, Smelser,[3] Brubaker, and Schwartz filed their Motion to Dismiss, arguing that (1) Plaintiff's

claims against the CDOC Defendants in their official capacities are barred by the Eleventh

Amendment; (2) Plaintiff's Complaint fails to state a claim for damages; (3) Plaintiff's claims

against the CDOC Defendants fail for lack of personal participation; and (4) the CDOC

Defendants are entitled to qualified immunity.  (Doc. No. 24.)

Plaintiff filed a combined response to the motions to dismiss on March 10, 2011.  (Doc.

No. 26.)   The CCA Defendant filed their reply on March 24, 2011.  (Doc. No. 29 [Reply].)

Plaintiff filed his Supplement to his response, considered by this court as a surreply (*see* Doc.

---

[1]Defendant Cosme Gallegos's name is incorrectly spelled in the caption of the Plaintiff's Complaint as "Cosmos Gallegos," and Defendant Augie Vargas's name is incorrectly spelled in the caption of the Plaintiff's Complaint as "Auggie Bargas."  The court hereinafter will refer to these defendants with the correct spellings.

[2]These defendants are employed by Corrections Corporation of America, which owns BCCF. These defendants hereinafter collectively will be referred to as the "CCA Defendants."

[3]Defendant Tim Smelser's name is incorrectly spelled in the caption of the Plaintiff's Complaint as "Smeltzer.,"  The court hereinafter will refer to this defendants with the correct spelling.

No. 41), on April 25, 2011.  (Doc. No. 33-1 [Surreply].)  The motions are ripe for review and recommendation.

## LEGAL STANDARD

### 1.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### 2.    *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule

12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination

that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction

rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th

Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise

jurisdiction when specifically authorized to do so).  The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d

906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of

the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d

at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v.

Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id*.

### 3.      *Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

6

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing

*Twombly*, 550 U.S. at 555).  Moreover, "[a] pleading that offers 'labels and conclusions' or a

formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation

omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' "

*Id.* (citations omitted).

## ANALYSIS

### 1.    *Eleventh Amendment Immunity*

The CDOC Defendants argue that Plaintiff's claims against them in their official

capacities are barred by the Eleventh Amendment.  (Doc. No. 24 at 4.)  The Eleventh

Amendment to the United States Constitution states: "The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the

citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits

against state officials in their official capacity should be treated as suits against the state.  *Hafer*

*v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her

official capacity is a suit against the official's office and therefore is no different from a suit

against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The

Eleventh Amendment thus shields state officials, acting in their official capacities, from claims

for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  Moreover, a

section 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states

nor state officers sued in their official capacity for monetary damages are persons within the

meaning of section 1983.  *Will*, 491 U.S. at 70-71.

Plaintiff's claims for monetary relief against the CDOC defendants in their official

capacities constitute claims against the Colorado Department of Corrections.  *See Will*, 491 U.S.

at 71.  Therefore, Plaintiff's official-capacity claims for monetary relief against the CDOC

defendants are barred by the Eleventh Amendment and should be dismissed for lack of subject

matter jurisdiction.  *See id.*; *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).[4]

## 2.    *Claims for Injunctive Relief* [5]

In his Complaint, Plaintiff seeks various forms of injunctive relief related to his claims.

(*See* Compl. at 36.)  All of Plaintiff's claims are related to Defendants' actions or inactions while

he was housed at BCCF.  However, Plaintiff has since moved to Crowley County Correctional

Facility (CCCF).  (*See* Doc. No. 26 at 7.)  Plaintiff's transfer to CCCF renders his claims for

injunctive relief moot.  *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (prisoner's

transfer mooted his claim for injunctive relief as a judgment in the prisoner's favor "would

---

[4]Under *Richardson v. McKnight*, 521 U.S. 399, 401 (1997), Eleventh Amendment immunity does not apply to employees of a private contractor operating a prison for a state.  Thus, to the extent Plaintiff's claims survive, the CCA employees may be liable in both their individual and official capacities.

[5]Although Defendants failed to move to dismiss Plaintiff's claims for injunctive relief, the court may analyze the sufficiency of these claims here *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him").  Therefore, it is recommended that Plaintiff's claims for injunctive relief be dismissed on grounds of mootness.  *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("Because mootness is a matter of jurisdiction, a court may raise the issue *sua sponte*.").

### 3.      *Claim for Denial of Access to Courts*

Plaintiff asserts Defendants violated his right of access to the courts by limiting him to a single photocopy of his legal documents, by denying him indigent status so he could obtain copies free of charge, and by restricting his access to the library.[6,7]

Prison inmates have a constitutional right to meaningful access to the courts.  *Bounds,* 430 U.S. at 823.  That right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. at 828.  "Conversely, prison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim."  *Green*

---

[6]The CDOC Defendants argue Plaintiff has failed to state a Sixth Amendment constitutional violation for his claim for denial of access to the courts.  (CDOC Mot. at 10.)  The court is unable to find a reference to the Sixth Amendment in Plaintiff's Complaint.  Thus, the court is unsure whether this characterization is Plaintiff's or Defendants'.  Regardless, this claim is properly analyzed under the Fourteenth Amendment.  *See Bounds v. Smith*, 430 U.S. 817, 818 (1977) (denial of access to courts violates Fourteenth Amendment).

[7]Plaintiff does not specifically allege that his suspension from the library violated his right of access to the courts.  Instead, Plaintiff asserts that he was denied due process by his suspension without the ability to challenge the suspension.  (*See* Compl., ¶ 15.)  To the extent Plaintiff's claim implicates his right of access to the courts, this court addresses his allegations *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (internal quotation marks and citation omitted).

This right of access only requires that inmates have access to the tools they need to attack their sentences or challenge the conditions of their confinement. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). To present a valid denial of access claim, plaintiff must show that he suffered "actual injury" due to the defendants' actions. *Lewis*, 518 U.S. at 351. Plaintiff must demonstrate that the alleged shortcomings in the library hindered, frustrated or impeded the plaintiff's efforts to pursue a nonfrivolous direct appeal from his conviction, a habeas corpus petition or a civil rights claim pursuant to section 1983 to vindicate basic constitutional rights. 518 U.S. at 351, 354. For instance, an inmate "might show . . . that a complaint he prepared was dismissed for failure to satisfy some technical requirement." *Id.* at 351.

## A.    *Restricted Photocopies*

Plaintiff alleges due to Defendants' failure to photocopy in their entirety or to allow more than one photocopy of court documents, he has been unable to provide copies of his documents to the opposing parties, as is required in the Colorado state courts.[8] (*See* Compl., ¶¶ 56, 58, 61, 66–68.)

---

[8]Though it is unclear in Plaintiff's Complaint, in Plaintiff's response he asserts that he was denied access to legal photocopies completely from November 5, 2009, to January 14, 2100. (Resp. at 2.) It appears this was due to Plaintiff's suspension from the library during that time period.

With the exception of the one case that was dismissed (*see* Compl., ¶ 61), one case that is "at a 'standstill' " due to Plaintiff's opening brief being stricken (*see id.*, ¶ 58), and one case that Plaintiff filed past the statute of limitations (*see id.*, ¶ 48), which this court addresses below, Plaintiff has failed to allege any actual harm that resulted from Defendants' failure to provide photocopies.  Plaintiff asserts varying harms "ranging from mere temporary inconveniences to significant unwarranted waste of his time and resources, and from minor interference with disruption of his ability to supply the courts and named parties with relevant documents . . . ." (Compl. at 31 ¶ III.)  These "minor interferences" amount to nothing more than mere deprivation, and not actual injury that is a constitutional prerequisite to bringing a claim. *Lewis*, 518 U.S. at 351.  Moreover, "it is not enough for [the plaintiff] to state that he is unable to file motions or briefs."  *See Harrison v. Bent Co. Corr. Facility*, 24 F. App'x 965, 967 (10th Cir. 2001).

To the extent Plaintiff alleges actual harm, such as the dismissal of his case in Crowley County District Court (*see* Compl., ¶ 61), the delay in another case due to Plaintiff's opening brief being stricken (*see id.*, ¶ 58), and the case in which Plaintiff filed the complaint after the statute of limitations expired (*see id.*, ¶ 48) Plaintiff has not shown that the injuries resulted from the defendants' actions.  An offender's ability to make legal photocopies is governed by Administrative Regulation (AR) 750-01.[9]  (*See* Mot, Ex. B.)  The AR provides that offenders will be provided with the proper number of legal photocopies to file a petition for writ of habeas

---

[9]A court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

corpus, suits complaining of the conditions of confinement, or post-conviction actions.  (*Id.*, AR 750-01.IV.E.2.)  The number of photocopies that will be provided is the required number determined by court rule.  (A.R. 750-01F.)  Offenders are provided with and charged for the copies even when necessary funds are not available.  (*Id.*, AR 750-01.IV.E.2.)  However, offenders whose accounts have arrearages, for photocopy charges only, of $500.00 or more, may have their photocopy privileges restricted.  (*Id.*, AR 750-01.IV.E.2.a.)

Because of this, the state courts have stricken several of his court documents, including an opening brief, a response to two motions to dismiss, and a reply brief.  (*Id.*, ¶¶ 56, 58, 61, 66–68; *see id.*, Attach. 1 at 45–50.)  Plaintiff states in the Crowley County District Court, Case Number 08cv43, the striking of his response to the motions to dismiss had a direct impact on his case, "as the Court simply granted the Defendants' 'Motions to Dismiss' without allowing his essential rebuttals of the same to ever be heard."  (*Id.*, ¶ 61; *see* Compl., Attach. 1 at 44–49.)  Plaintiff also asserts he was over four months past the statute of limitations in filing a complaint in Kit Carson District Court because of Defendants' failure to photocopy the document. (Compl., ¶ 48; Surreply at 2.)  Plaintiff received orders dated March 30, 2010; April 27, 2010; and May 18, 2010, striking various documents filed in Bent County District Court and Crowley County District Court for Plaintiff's failure to serve opposing counsel pursuant to Rule 5 of the Colorado Rules of Civil Procedure.  (*See* Compl., Attach 1 at 41, 45, 46.)  Thus, Plaintiff was aware as early as March 30, 2010, that he must comply with Colorado's Rule 5 or risk having his documents stricken.

Plaintiff apparently was aware his Kit Carson District Court case would be filed past the statute of limitations, and he wrote the Kit Carson District Court a letter at the same time he filed his case to explain that the late filing was the fault of the Defendants.  (*See id.*, ¶¶ 46, 48.) However, Plaintiff states his work on that complaint was completed on November 15, 2009, nearly three months before he mailed his it to the Kit Carson District Court on February 9, 2010. (*See id.*)

A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when . . . there are suitable alternatives."  *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980).  The Tenth Circuit has found that hand-writing copies of court documents is a reasonable alternative to photocopying court documents when a court does not require typed documents.  *See Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006).  Plaintiff acknowledges he has spent many hours handwriting documents to be submitted for filing with the courts.  (*See* Compl., ¶¶ 10, 13, 24, 28, 29, 30, 31, 34, 38, 44, 47 and 48.)  Nevertheless, in his Complaint, Plaintiff cites *Johnson v. Parke*, 642 F.2d 377 (10th Cir. 1981), in support of his argument that he should not "have to engage in the needlessly draconian practice of copying documents by hand."  (Compl. at 31.III [citing *Parke*, 647 F.2d at 380].)  However, in *Parke*, the Tenth Circuit found the practice to be draconian "when a photocopying machine is available and the inmate is able and willing to compensate the state for its use."  647 F.2d at 380.  That clearly is not the case here.

Plaintiff, in his response, argues handwriting the documents "would unquestionably be an impossibility for him" because he is allotted limited amounts of paper per month, because he has

limited time and resources of pencils and erasers, and that certain exhibits cannot be reproduced by handwriting them. (Resp. at 5.) Applying an analysis by the Fourth Circuit, the Tenth Circuit stated:

> Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system.

*Shabazz v. Parsons*, 127 F.3d 1246, 1249 (10th Cir. 1997) (quoting *Roller v. Gunn*, 107 F.3d 227, 231–34 (4th Cir. 1997) (analyzing constitutionality of PLRA requirement that a plaintiff proceeding *in forma pauperis* must make partial payments of the appellate filing fee).

There is no reason Plaintiff, knowing documents, including his opening brief and response to the motions to dismiss, could be stricken if he did not provide a copy to opposing counsel, could not have chosen to utilize the reasonable alternative of providing handwritten copies of those two documents to the opposing counsel. The same is true of Plaintiff's Complaint in Kit Carson District Court, where Plaintiff had nearly three months to handwrite an additional copy of his complaint and file it.

Finally, "[a]lthough there is some responsibility to provide an inmate with the incidentals necessary to pursue legal action, reasonable restrictions based upon budgetary concerns are acceptable." *Harrison*, 24 F. App'x at 967 (citing *Harrell*, 621 F.2d at 1061). "This would include reasonable limits on amounts 'advanced' to inmates for copying and postage." 24 F. App'x at 967. "At some point, the institution may limit the amount of advances to an inmate to

preserve funds and encourage inmate responsibility without denying access to the courts.  *Id.* (citing *Blaise v. Fenn*, 48 F.3d 337, 339–40 (8th Cir. 1995).  Plaintiff acknowledges, and the documents submitted with his complaint reflect, that Plaintiff had "gone deeply into debt in tending to his own legal work."  (Compl. at 3.)  In fact, on May 29, 2009, when Plaintiff was first notified of the restriction that would allow for only one photocopy of court documents, Plaintiff was $1,086.85 in arrears for legal photocopy debt.  (*Id.* at 37.)  On January 21, 2010, in response to Plaintiff's grievance regarding the denial of photocopies, Defendant DeCesaro advised Plaintiff he was $1,331.22 in arrears, with $1,017.00 of that debt from accumulated photocopying costs.  (*Id.* at 46.)

Thus, based on the facts alleged by Plaintiff, the limit of one photocopy of each document does not rise to the level of a Fourteenth Amendment violation, and therefore Plaintiff fails to state a claim for denial of access to courts in this regard.

**B.     Indigent Status** [10]

Plaintiff also complains that the defendants have "den[ied] him much-deserved 'indigent status' " and thus denied him access to the courts.  (Compl. at 3.)  Plaintiff argues that, because his inmate account is deeply in arrears, he should be able to qualify for indigent status, which would entitle him to free photocopies.  (*Id.*)  Plaintiff states he was automatically disqualified from indigent status because he was employed by the prison.  (*Id.*, ¶ 53.)

---

[10]The court analyzes the sufficiency of this claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

It is the policy of CDOC to ensure that indigent offenders have access to the courts. AR 850-14.I. The AR provides that an inmate may be approved for indigent status if he has not received offender pay for the preceding 30 days, his inmate account has not exceeded $4.60 in the preceding 30 days, and he is not in community corrections or on parole. AR 850-14.IV.B.1 and IV.C.1. An indigent inmate is provided with legal photocopies pursuant to AR 750-01.

Plaintiff is in the unusual position of complaining that he makes too much money in his prison job to qualify for indigent status, and this disqualification denies him access to the courts. (*See* Compl. at 3.) However, according to the AR, Plaintiff would not be able to qualify for indigent status no matter what job he holds, whether it is a low-paying or high-paying position. Moreover, as evidenced by the Plaintiff's numerous pleadings filed in various state and fedearl cases, he has not been denied access to the courts by the defendants' alleged failure to grant him indigent status, and thus to allow free photocopies.

Finally, there was no harm in Defendants' alleged failure to grant Plaintiff indigent status, as he was not prevented from obtaining any copies due to his inability to pay, but instead, his ability to photocopy only was restricted. The constitutional concept of an inmate's right of access to the courts does not require prison officials to provide the inmate with free or unlimited access to a photocopying machine. *Harrell*, 621 F.2d at 1061. Therefore, Plaintiff has failed to state a claim for violation of his rights of access to the courts based on Defendants' failure to grant indigent status.

### C.      Suspension from Library [11]

Plaintiff alleges he was suspended from the library for forty-five days, contrary to CDOC policies.  (Compl, ¶ 15.)  However, Plaintiff does not allege the temporary restriction purportedly placed by the defendants on his access to prison law library materials hindered his efforts to pursue a nonfrivolous claim.  Thus, Plaintiff has failed to state a claim that his library suspension violated his right of access to the courts.

In light of the foregoing, Plaintiff's claims for denial of access to the courts are properly dismissed for failure to state a claim.

### 2.      Due Process Claims [12]

Plaintiff asserts various claims that Defendants violated his procedural due process rights in violation of the Fourteenth Amendment (*see* Compl. at 33.VIII) when they restricted him from filing grievances, secretly read and made copies of documents he submitted for photocopying, suspended him from the library, limited his copying privileges, failed to return property taken in a shakedown of his cell, and forwarded his mail to a reading committee.  (*Id.*, ¶¶ 1, 4, 9, 12, 15, 25–26, 52.)

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property."  *Chambers v. Colo. Dep't of Corrs.*, 205 F.3d 1237, 1242 (10th Cir.

---

[11]The court analyzes the sufficiency of this claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[12]The court analyzes the sufficiency of these claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2000) (citation omitted).  A plaintiff must make two showings in order to proceed on a procedural due process claim.  *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001) (overruled on other grounds).  First, he must show that he possesses a protected liberty interest.  *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184–85 (10th Cir. 2001).  Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances.  *See Bartell*, 263 F.3d at 1149.  The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

### A.    *Prison Grievance Procedures*

Plaintiff alleges on November 4, 2009, he was informed that he would be limited to filing one grievance every 120 days, due to his filing too many grievances.  (Compl., ¶ 9.)  However, prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights.  *See Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99–8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.' ") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Dep't of Corrs.*, No. 98–1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that a state inmate's section 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner").  *See also Flick*

*v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure).

As Plaintiff has failed to make the requisite showing that he possesses a protected liberty interest, *see Bartell*, 263 F.3d at 1149, his allegations concerning prison grievance procedures do not state a claim upon which relief may be granted, and the claim for violations of due process related to the prison's grievance procedures must be dismissed.

### B.      *Alleged Violations of CDOC Policies*

Plaintiff alleges the defendants restricted his photocopying privileges, secretly read and made copies of documents submitted for photocopying, suspended him from the library for forty-five days without any chance to challenge the suspension, looked through documents and failed to return property taken in a shakedown of his cell, and forwarded his mail to a reading committee. (Compl., ¶¶ 1, 4, 12, 15, 25–26, 52.) Plaintiff alleges these actions by the defendants violated CDOC policies and thus violated his procedural due process rights. (*Id.*)

To the extent Plaintiff's allegations are based on the defendants' alleged failure to properly follow various prison regulations concerning disciplinary actions, Plaintiff fails to allege the violation of a Constitutional right. Prison regulations are "primarily designed to guide

correctional officials in the administration of a prison.  [They are] not designed to confer rights

on inmates."  *Sandin*, 515 U.S. at 481–82.  Thus, even if prison officials did not strictly follow

the prison's internal regulations, such failure would not constitute a violation of Plaintiff's right

to due process.  *See Malik v. Kindt*, No. 95-6057, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996)

("a failure to adhere to administrative regulations does not equate to a constitutional violation")

(quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir.1993)).  Thus, Plaintiff's due

process claims based on alleged violations of prison regulations should be dismissed for failure

to state a claim.

### 3.      *Claims for Unreasonable Search and Seizure* [13]

Plaintiff alleges Defendants Spano and Holcomb performed a "shakedown" of his cell on

November 7, 2009.  (Compl., ¶ 12.)  Plaintiff states the defendants were in his cell for

approximately two and one-half hours, during which time they removed alleged contraband

material, legal materials, and personal items.  (*Id.*)  Plaintiff alleges the "shakedown" was "the

very definition of an 'unreasonable search and seizure.' " (*Id.*; *see also* ¶ 25.)

Prisoners are not protected under the Fourth Amendment from unreasonable searches of

their prison cells or from the wrongful seizure of property contained in their cells because "the

Fourth Amendment does not establish a right to privacy in prisoners' cells."  *Hayes v. Marriott*,

70 F.3d 1144, 1146 (10th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–30 (1984)).

The Supreme Court stated:

---

[13]The court analyzes the sufficiency of these claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

> The uncertainty that attends random searches of cells renders these searches perhaps the most effective weapon of the prison administrator in the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband. The Court of Appeals candidly acknowledged that "the device [[[[of random cell searches] is of . . . obvious utility in achieving the goal of prison security."

*Hudson*, 468 U.S. at 528 (alterations in original) (citation omitted).   Therefore, Plaintiff's claims based on his contention that the defendants violated his Fourth Amendment rights against unreasonable searches and seizures in his prison cell necessarily fail for failure to state a claim.

**4.**     ***Equal Protection Claims***

Plaintiff asserts a claim for Defendants' alleged violations of his rights under the Equal Protection Clause.  (*See* Compl. at 17–20.)  Specifically, Plaintiff alleges the defendants limited his ability to practice his music, denied him good behavior privileges, and limited his access to an adequate diet by limiting him to one eight-ounce glass of milk per day.  (*Id.* at 17.)

The Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause mandates that the government treat similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To assert a cognizable equal protection claim, Plaintiff must make the threshold showing that he is treated differently from other inmates who are similarly situated to him. *Fogle v. Pierson*, 435 F.3d 1252, 1260–61 (10th Cir. 2006); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citation omitted).

Plaintiff alleges he is treated differently from inmates "similarly situated" at other CDOC facilities.  (Compl. at 17–120.)  For instance, Plaintiff alleges BCCF's policies regarding inmates' use of musical instruments "[falls] short of any other prison he has been held at."  (*Id.* at 17.A.)  Plaintiff also alleges BCCF's policy of allowing only a single eight-ounce serving of milk is different from the policy at other CDOC facilities, which provide a milk dispenser and allow inmates to refill their cups as desired.  (*Id.* at 17.B.)  Finally, Plaintiff alleges unlike BCCF, "every other CCA privately-operated prison in the state provides" a " 'service/honor pod' [or] single cell occupancy to its residents as incentive/reward for good behavior."  (*Id.* at 17, ¶ C.)

However, the privileges, programs and other accouterments of one prison need not be extended to all within the same system.  *Bell v. Wolfish*, 441 U.S. 520, 554 (1979).  Prison administrators have broad discretion to manage penal institutions and make the decisions which need to be made for the system as a whole and the security and successful operation of each individual facility.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)).  The plaintiff has failed to state a claim that he was treated differently from other inmates housed at BCCF, and his Equal Protection claims, therefore, should be dismissed for failure to state a claim.

*5.*     *Violations of Privacy Rights* [14]

Plaintiff alleges Defendant Barker secretly copied "all of the legal work which he had submitted for photocopying and stor[ed] them in a file in her office, and that both she and her inmate clerk" read the documents.  (Compl., ¶ 5.)

The constitutional right to privacy depends on whether the person claiming its protection has a legitimate expectation of privacy that society is prepared to recognize as reasonable. *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir.2009).  In the prison context, the Supreme Court held:

> Determining whether an expectation of privacy is "legitimate" or "reasonable" necessarily entails a balancing of interests.  The two interests here are the interest of society in the security of its penal institutions and the interest of the prisoner in privacy within his cell.  The latter interest, of course, is already limited by the exigencies of the circumstances:  A prison "shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room."  We strike the balance in favor of institutional security, which we have noted is "central to all other corrections goals."  A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.  We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.  We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement."

*Hudson*, 468 U.S. at 527–28 (internal citations omitted).

Plaintiff cites *United States v. Hinckley*, 672 F.2d 115 (D.C. Cir. 1982), and *People v. Williams*, 325 N.W.2d 4 (Mich. Ct. App. 1982), in support of his contention that Defendant

---

[14]The court analyzes the sufficiency of these claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

23

Barker violated his rights to privacy.  (*See* Compl. at 31, ¶ IV.)  In *Hinckley*, the court held that

where prison guards were not acting in accord with an established institutional practice or policy

in reading the prisoner's personal notes, there was an invasion of the prisoner's privacy rights.

*Hinckley* 672 F.2d at 130–31 (discussing *United States v. Hinckley*, 525 F. Supp. 1342 (D.D.C.

Nov. 17, 1981)).  In *Williams*, where an inmate wrote a letter and gave it to a jailer for copying,

the court held that the inmate could not expect he could use jail personnel to deliver the letter

without the jailer first determining whether such messages contained information adverse to the

jail's legitimate interest in preserving internal security, order and discipline.  *Williams*, 325 N.W.

2d at 6.

Here, Plaintiff alleges Defendant Barker was not acting in accord with a CCA policy

prohibiting staff who copy legal materials for inmates from reading the materials.  (Compl. at 31,

¶ IV.)  Though Defendant Barker may have had a legitimate institutional interest in the alleged

photocopying and retention of Plaintiff's court documents, the CCA Defendants have failed to

address this claim or to make such an argument in their motion to dismiss.  Thus, the court is

unable to balance the interests of the prison with Plaintiff's privacy interests.  As such, Plaintiff's

claim for violation of his privacy rights should proceed against Defendant Barker.

**6.   *Retaliation Claims*** [15]

Last, Plaintiff asserts claims for retaliation.  Prison officials may not retaliate against or

harass an inmate because of the inmate's exercise of his right of access to the courts.  *Smith v.*

_____

[15]The court analyzes the sufficiency of these claims *sua sponte* pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).

*Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).  Such retaliation or harassment by officials for exercising a constitutionally protected right is actionable under 42 U.S.C. § 1983.  *Maschner*, 899 F.2d at 948.  To establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Maschner*, 899 F.2d at 949–50 (quotations omitted).

Plaintiff claims Defendants retaliated against him for filing formal complaints and grievances against them.  (*See* Compl. at 3.)  Plaintiff alleges Defendants retaliated by filing false disciplinary charges against him, restricting his photocopying privileges, limiting his filing of grievances, and suspending him from the library.  (*See id.* at 31–32; ¶¶ 8, 9, 10, 12, 26, 42.)  At this stage, the court accepts the Plaintiff's factual allegations of retaliation as true.  *See Hall*, 935 F.2d at 1109.  Plaintiff alleges that the alleged retaliatory incidents would not have occurred if he had not complained about the defendants.  (*See id.*)  As Plaintiff has made allegations to satisfy the requirements set forth in *Maschner*, the court finds that Plaintiff has made allegations sufficient to state a claim for retaliation.

**7.     *Personal Participation***

Having determined the only claims asserted by Plaintiff that survives a motion to dismiss are his claims for violations of his privacy rights and retaliation, the court addresses whether Plaintiff has alleged that each defendant caused or personally participated in the alleged violations.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  In

25

*Ashcroft v. Iqbal*, the Supreme Court held that supervisors can only be held liable for their own misconduct. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Under this decision, a supervisor cannot incur liability under section 1983 for his mere knowledge of a subordinate's wrongdoing. *Id.* After *Iqbal*, the Tenth Circuit has held that a plaintiff may succeed in a section 1983 suit against a defendant-supervisor by demonstrating: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citing *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002)). Even under pre-*Iqbal* standards, a plaintiff had to allege "a deliberate, intentional act by the supervisor to violate constitutional rights," which was present only if "the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996). Plaintiff also had to allege an "affirmative link" between "the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise," so as to establish causation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)); *see also Dodds*, 614 F.3d at 1201 n.9; *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

Finally, the state of mind required to establish a section 1983 claim based on supervisory liability is the state of mind requirement that is tied to the underlying constitutional provision at issue. *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1948; *Dodds*, 614 F.3d at 1204–1205. To establish a

26

violation of section 1983 by a supervisor, the plaintiff must, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights.  *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010).

As noted in section 5 *infra*, the alleged violation of Plaintiff's privacy rights relates specifically to Defendant Barker's allegedly photocopying and retaining Plaintiff's legal documents for herself.  (*See* Compl., ¶ 5.)  As noted in section 6 *infra*, the alleged retaliatory acts in which personal participation must be established for each individual defendants are filing false disciplinary charges against him, restricting his photocopying privileges, limiting his filing of grievances, and suspending him from the library.  (*See id.* at 31–32; ¶¶ 8, 9, 10, 12, 26, 42.)

### A.     Defendant Zavaras

Plaintiff alleges Defendant Zavaras, the CDOC Executive Director, is responsible for the "organization and administration of all correctional facilities," including managing, supervising, and controlling the facilities, developing policies and procedures governing the facilities, and implementing of and compliance with Administrative Regulations.  (*See* Compl. at 23, ¶ 1.)

Plaintiffs' allegations against Defendant Zavaras are based on nothing more than his supervisory capacity and amount to no more than *respondeat superior* liability.  Plaintiff has not alleged that Defendant Zavaras had any specific knowledge of Plaintiff's circumstances, and, as such, Plaintiff's allegations do not support a claim that Defendant Zavaras had any direct involvement in, personal participation in, or direct supervisory liability for the alleged constitutional violations.

### B.     Defendants Bryant, Sloan, and Lopez

Plaintiff alleges that Defendant Bryant, the Assistant Warden at BCCF, "never did a thing to halt and/or remedy any of the wrongdoing of her employees which was brought to her attention time and time again." (Compl. at 24, ¶ 4.)  Plaintiff asserts Defendant Sloan, the Warden of BCCF, is "responsible for the establishment of a policy, the training and supervision of staff, and other duties at his facility." (Compl. at 25, ¶ 6.)  Plaintiff asserts Defendant Sloan bears the responsibility of ensuring staff members correctly follow the policies. (*Id.*)  Finally, Plaintiff alleges Defendant Lopez, a BCCF Case Manager, "failed to act in light of the information provided to him" regarding Defendant Barker's alleged constitutional violations. (Compl. at 26, ¶ 9.)

Again, Plaintiff's allegations against Defendants Bryant, Sloan, and Lopez are based merely on their supervisory capacity and amount to no more than *respondeat superior* liability. A supervisor cannot incur liability under section 1983 for his mere knowledge of a subordinate's wrongdoing. *Iqbal*, 129 S. Ct. at 1949.  Moreover, Plaintiff has failed to establish a deliberate and intentional act on the part of Defendants Bryant, Sloan, and Lopez to violate his legal rights. *Porro*, 624 F.3d at 1327–28.  Plaintiff's allegations against Defendants Bryant, Sloan, and Lopez are not sufficient to support personal participation in the alleged constitutional violations.

### C.     Defendants Cox and Smelser

Plaintiff alleges that Defendant Cox, "[t]he third highest-ranking employee at the BCCF behind the Warden and Assistant Warden, [ ] possess the authority, as per his position, to investigate the plaintiff's allegations of having been subjected to repeated acts of retaliation."

28

(Compl. at 28, ¶ 17.)  Plaintiff alleges Defendant Cox "refused to listen to the plaintiff."  (*Id.*)

Plaintiff also alleges that Defendant Smelser, the "Private Prisons Monitoring Unit

Representative" for the CDOC, has "the authority of the CDOC behind him to make decisions

and take legal actions in the interest of that entity."  (*Id.* at 28, ¶ 19.)

Plaintiff has failed to allege that Defendants Cox or Smelser personally retaliated against

him.  Instead, Plaintiff's allegations against these defendants are based merely on their

supervisory capacity and amount to no more than *respondeat superior* liability.  A supervisor

cannot incur liability under section 1983 for his mere knowledge of a subordinate's wrongdoing.

*Iqbal*, 129 S. Ct. at 1949.  Plaintiff has failed to establish a deliberate and intentional act on the

part of these defendants to violate his legal rights, *Porro*, 624 F.3d at 1327–28, and his claims

against them should be dismissed for failure to allege personal participation in the alleged

constitutional violations.

### C.    *Defendants DeCesaro and Phillips*

Plaintiff alleges Defendant DeCesaro, a grievance officer at BCCF, "had the authority to

remedy the violation of the plaintiff's right[s]."  (Compl. at 26, ¶ 7.)  Plaintiff asserts Defendant

DeCesaro "failed to act when it was justified and warranted."  (*Id.*)  Plaintiff assert Defendant

Phillips failed to exercise the power given to her by the Administrative Regulations to grant

grievances filed by Plaintiff related to Defendant Barker.  (*Id.* at 24, ¶ 5.)

"In the Tenth Circuit, constitutional allegations against an actor whose only involvement

was during the grievance process do not state a claim."  *Thomas v. Ortiz*, No. 07-cv-00400-

WDM-MEH, 2007 WL 3256708, at *3–4 (D. Colo. Nov. 1, 2007) (inmate failed to state a claim

of deliberate indifference against grievance officer).  *See Walker v. Meyer*, No. 08-cv-01911-REB-KLM, 2009 WL 961490, at *4 (D. Colo. Apr. 7, 2009) ("[M]ere participation in the grievance process is an insufficient basis for asserting a violation of constitutional rights . . . . The 'mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct.' ") (quoting *Boles v. Dansdill*, No. 05-cv-1661-PSF-CBS, 2007 WL 2770473, at *4 (D. Colo. Sept. 20, 2007)).

Because Plaintiff has failed to allege Defendants DeCesaro and Phillips personally participated in the alleged constitutional violations, the claims against them are properly dismissed for failure to state a claim.

### D.      Defendants Brubaker, Whitehouse, Spano, Holcomb, and Chavez

Plaintiff alleges Defendants Brubaker and Whitehouse "informed him that he was now being limited to the filing of just 1 grievance per 120 days due to having supposedly filed too many in the past."  (Compl., ¶ 9.)  Plaintiff surmises this was a "likely act of retaliation" for his filing a Step 1 grievance against Defendant Barker just one day earlier.  (*Id.*)  Plaintiff also alleges Defendant Barker recruited Defendants Spano and Holcomb to perform a "shakedown" of his cell in retaliation against Plaintiff on her behalf.  (*Id.*, ¶ 12.)  Finally, Plaintiff alleges Defendant Chavez "knew and approved of the search of the plaintiff's cell on November 7, 2009," and that "he acquiesced to [Defendant] Barker's wrongful retaliation . . . ."  (*Id.* at 28, ¶ 18.)

However, Plaintiff has failed to allege that Defendants Brubaker, Whitehouse, Spano, Holcomb, or Chavez knew of the grievance allegedly filed against Defendant Barker or that the defendants' actions were substantially motivated as a response to Plaintiff's filing of grievances against Defendant Barker.  *Maschner*, 899 F.2d at 949–50.  Thus, Plaintiff has failed to allege personal participation by Defendants Brubaker, Whitehouse, Spano, Holcomb or Chavez in the alleged constitutional violations.

### E.      *Defendant Kasen*

Plaintiff alleges he spoke to another inmate who informed Plaintiff that he had overheard Defendant Kasen, an assistant librarian, state that she disliked Plaintiff and was considering finding a way to have him suspended from the library after his first suspension expired. (Compl., ¶ 27.)  Plaintiff asserts this was part of a retaliatory scheme against him for filing complaints against Defendant Barker.  (*Id.*)

Plaintiff's retaliation claim against Defendant Kasen fails.  As stated above, to establish a claim for retaliation, a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Maschner*, 899 F.2d at 949–50 (quotations omitted).  First, there is no indiction that Plaintiff was suspended from the library for a second time.  Additionally, Plaintiff has failed to allege that Defendant Kasen knew of the grievance filed against Defendant Barker.  Thus, Plaintiff has failed to show that Defendant Kasen personally participated in any constitutional violation, and the claims against her are properly dismissed for failure to state a claim.

### F.      Defendant Barker

Plaintiff alleges Defendant Barker secretly copied "all of the legal work which he had submitted for photocopying and stor[ed] them in a file in her office, and that both she and her inmate clerk" read the documents.  (Compl., ¶ 5.)  Additionally, Plaintiff alleges Defendant Barker, in retaliation for his having recently filed a grievance and letter of complaint regarding her conduct, fabricated a false disciplinary charge against him.  (Compl., ¶ 8.)  Thus, Plaintiff sufficiently has alleged that Defendant Barker personally participated in the alleged violation of his privacy rights and retaliatory acts.

### G.      All Remaining Defendants

Plaintiff alleges the remaining defendants – Defendants Arambel, Brown, and Schwartz, Beebe, Medina, Gallegos, Food Services Manager Ben, and Vargas – participated only in Plaintiff's claims for denial of access to the courts, due process violations, unreasonable search and seizure, and Equal Protection violations and not the alleged violation of his privacy rights or any retaliatory acts.  As this court has recommended dismissal of these claims in which Plaintiff has made allegations against them, the court need not decide whether Plaintiff has sufficiently alleged that the these defendants personally participated in the alleged violations.

### 8.      Prison Litigation Reform Act

The CDOC Defendants argue that Plaintiff's claims for compensatory damages must be dismissed for failure to state a claim because he has not alleged that he suffered any physical injury.  (CDOC Mot. at 5.)  The Prison Litigation Reform Act (PLRA) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  *See also Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff does not allege a physical injury resulting from Defendant Barker's alleged retaliatory actions.  However, he does seek to recover for his mental or emotional damage related to the alleged retaliation.  (*See* Compl. at 6, ¶ 11 [Plaintiff was "riddled with tension, anxiety, and unease as he feared for his personal safety."].)  He also seeks to recover mental or emotional damages related to the alleged violation of his privacy rights.  (*See id.*)  Thus, his request for recovery of compensatory damages for mental and emotional injury is barred.

Nevertheless, section 1997e(e) does not bar recovery of punitive damages.  *Searles*, 251 F.3d at 881 (noting that "Congress simply did not choose to provide a restriction on punitive damages")[16].  Thus, to the extent Plaintiff is seeking recovery, including punitive damages, unrelated to mental and emotional harm, the limitation Defendants seek to impose–a prior showing of physical injury–does not apply.  *See id.*, 251 F.3d at 876 ("The statute limits the

---

[16]The CDOC Defendants moved for dismissal of Plaintiff's punitive damage claims for failure to state a claim.  (*See* CDOC Mot. at 5.)  However, the CCA Defendants, which include Defendant Barker, the sole remaining defendant, did not address Plaintiff's punitive damage claims. Thus, the court declines to analyze whether Plaintiff's Complaint contains sufficient allegations to state a punitive damages claim.

remedies available, regardless of the rights asserted, if the <u>only</u> injuries are mental or emotional.") (emphasis added).

**9.      *Qualified Immunity***

Finally, the CCA Defendants argue that they are entitled to qualified immunity on Plaintiff's access to courts claim.[17]  (CCA Mot. at 6–8.)  The Supreme Court in *Richardson* held that private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a section 1983 case.  *Richardson*, 521 U.S. at 413.  The CCA Defendants argue that when private defendants are closely supervised by the government, qualified immunity defense is available to those defendants.  (CCA Mot. at 6.)  However, the CCA Defendants fail to address whether the CCA Defendants, including Defendant Barker, were "closely supervised" or how they may have been following the CDOC's regulations as they pertained to Plaintiff's claims for violations of his rights to privacy or retaliation.  As such, this court declines to recommend that Defendant Barker be allowed to enjoy the defense of qualified immunity at this stage of the case.

WHEREFORE, for the foregoing reasons, this court respectfully

RECOMMENDS that

1.      "Defendants' Motion to Dismiss" (Doc. No. 17) be GRANTED in part as follows:

---

[17]In their motion, the CDOC Defendants also argued that they are entitled to qualified immunity.  (*See* CDOC Mot. at 9–14.)  However, as the court has determined all of the claims against the CDOC Defendants should be dismissed for Plaintiff's failure to state a claim, the court need not address whether the CDOC Defendants are entitled to qualified immunity.

a.     The claims for injunctive relief against Defendants Barker, Bryant, Sloan, Lopez, Spano, Holcomb, Arambel, Kasen, Brown, Cox, Chavez, Beebe, Medina, Gallegos, and Vargas should be dismissed as moot;

b.     The claims for denial of access to the courts, due process violations, unreasonable search and seizure, and equal protection violations against Defendants Barker, Bryant, Sloan, Lopez, Spano, Holcomb, Arambel, Kasen, Brown, Cox, Chavez, Beebe, Medina, Gallegos, and Vargas should be dismissed with prejudice for failure to state a claim upon which relief can be granted;

c.     The claims for violations of Plaintiff's privacy rights and for retaliation should proceed against Defendant Barker only, in her official and individual capacities; and

2.     "CDOC Defendants' Motion to Dismiss" (Doc. No. 24) be GRANTED, and that the claims against Defendants Zavaras, DeCesaro, CDOC Food Services Manager Ben, Smelser, Brubaker, and Schwartz be dismissed with prejudice in their entirety, for failure to state a claim upon which relief can be granted.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 9th day of August, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge