**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-02534-CMA-KMT

KEITH FRAZIER

      Plaintiff,

v.

ARISTEDES ZAVARAS, Executive Director, CDOC,
CELIA SCHWARTZ, Office of Correctional Legal Services, CDOC,
SUSAN BARKER, Librarian, BCCF,
JAN BRYANT, Assistant Warden, BCCF,
ERIN PHILLIPS, Grievance Coordinator, BCCF,
BRIGHAM SLOAN, Warden, BCCF,
ANTHONY DECESARO, Step 3 Grievance Coordinator, CDOC
SERGIO LOPEZ, Case Manager, BCCF
TRAVIS BRUBAKER, Private Prisons Monitoring Unit, CDOC,
TRUDI WHITEHOUSE, Private Prisons Monitoring Unit, CDOC,
CLAYTON SPANO, Sergeant, BCCF,
GERALD HOLCOMB, Correctional Officer, BCCF,
ROBERT ARAMBEL, Lieutenant, BCCF,
PAM KASEN, Assistant Librarian, BCCF,
STEVEN BROWN, SR, Investigator, BCCF,
LARRY COX, Chief of Security, BCCF,
CHRIS CHAVEZ, Unit 6 Manager, BCCF,
TIM SMELTZER, Private Prisons Monitoring Unit, CDOC,
DAVID BEEBE, Recreation Supervisor, BCCF,
WILLIAM MEDINA, Music Room Supervisor, BCCF,
COSMOS GALLEGOS, Program Manager, BCCF,
FOOD SERVICE MANAGER, CDOC, and
AUGGIE VARGAS, Food Service Supervisor, BCCF,

      Defendants.

---

**ORDER AFFIRMING IN PART AND REJECTING IN PART AUGUST 9, 2011
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

      This case was referred to United States Magistrate Judge Kathleen M. Tafoya

pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  (Doc. # 9.)  On August 9, 2011, the

Magistrate Judge issued a Recommendation (Doc. # 42) concerning "CDOC

Defendants' Motion to Dismiss"[1] (Doc. # 24) and "Defendants' Motion to Dismiss."[2]

(Doc. # 17.)  The Magistrate Judge recommended that CDOC Defendants' Motion to

Dismiss be granted and CCA Defendants' Motion to Dismiss be granted in part and

denied in part.  For the reasons stated below, the Court AFFIRMS IN PART and

REJECTS IN PART the August 9, 2011 Recommendation of the Magistrate Judge.

## I. BACKGROUND

Plaintiff Keith Frazier is a state prisoner currently incarcerated at the Crowley

County Correctional Facility ("CCCF") within the Colorado Department of Corrections

("CDOC").  Plaintiff commenced this case by filing an "admittedly massive" Complaint

on October 18, 2010.  (Doc. # 3.)  At all times relevant to his claims, Plaintiff was

incarcerated at the Bent County Correctional Facility ("BCCF").  In the Complaint,

Plaintiff asserts numerous claims and "sub-claims."  Liberally construed, Plaintiff has

asserted an access to courts claim, an unreasonable search and seizure claim, a right

to privacy claim, several procedural due process claims, several equal protection

claims, and, for good measure, numerous retaliation claims.  (*See* Doc. # 3 at 3-20,

30-33.)  Plaintiff has sued all Defendants in their official and individual capacities,

seeking compensatory damages, punitive damages, and injunctive relief.  (Doc. # 3

at 34-36.)

---

[1]  This motion was filed on behalf of Defendants Zavaras, DeCesaro, CDOC Food Services Manager Ben, Smelser, Brubaker, and Schwartz (collectively,"CDOC Defendants").

[2]  This motion was filed on behalf of Defendants Barker, Bryant, Sloan, Lopez, Spano, Holcomb, Arambel, Kasen, Brown, Cox, Chavez, Beebe, Medina, Gallegos, and Vargas (collectively, "CCA Defendants").

CCA Defendants filed a Motion to Dismiss on February 14, 2011 and CDOC

Defendants filed a Motion to Dismiss on February 28, 2011.  (Doc. ## 17, 24.)  Plaintiff

filed a combined response to these motions on March 10, 2011.  (Doc. # 26.)  After

CCA Defendants replied on March 24, 2011 (Doc. # 29), Plaintiff supplemented his

response (Doc. # 33), which was accepted by the Magistrate Judge as a surreply.

(Doc. # 41.)

In her Recommendation, the Magistrate Judge recommended that Plaintiff's

right to privacy and retaliation claims be allowed to proceed against Defendant Barker.

The Magistrate Judge recommended that all other claims against all other Defendants

should be dismissed with prejudice.  (*See* Doc. # 42 at 34-35.)

On August 23, 2011, CCA Defendants filed timely objections to the

Recommendation.  (Doc. # 45.)  Plaintiff, proceeding *pro se*, filed objections on

September 12, 2011.[3]  (Doc. # 47.)  Plaintiff, CCA Defendants, and CDOC Defendants

all filed responses to the objections.  (Doc. ## 48, 50, 51.)

## II.  STANDARD OF REVIEW

## A.    RECOMMENDATION OF MAGISTRATE JUDGE

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine

*de novo* any part of the magistrate judge's [recommendation] that has been properly

objected to."  Fed. R. Civ. R. 72(b)(3).  An objection is properly made if it is both timely

---

[3]  This Court had previously granted Plaintiff's Motion for Extension of Time, allowing him
to and including September 12, 2011 to file his objections.  (Doc. # 46.)  Thus, Plaintiff's
objections were received as timely filed.

and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th St.*,73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is timely if made within 14 days after the magistrate judge issues his recommendation.  *Id.*  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *See id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

## B.     MOTIONS TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The complaint will survive a motion to dismiss only if it "contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177(10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a court "accept[s] all the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994)).

Nevertheless, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## C.   *PRO SE* PLAINTIFF

Because Plaintiff is proceeding *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  ANALYSIS

The Court has carefully reviewed all relevant pleadings, including the Complaint,

the original motions to dismiss, the responses and reply thereto, the Magistrate Judge's

Recommendation, both Plaintiff and CCA Defendants' objections, and the responses

to those objections.  CCA Defendants assert that the Magistrate Judge erred by

recommending that Plaintiff's violation of privacy rights and retaliation claims against

Defendant Barker be allowed to proceed.  Although Plaintiff acknowledges the daunting

task the Magistrate Judge faced in reviewing his "massive" Complaint, Plaintiff

nevertheless objects to nearly every aspect of the Recommendation.[4]

The Court agrees with the Magistrate Judge that Plaintiff has stated a retaliation

claim against Defendant Barker; however, the Court disagrees with the

Recommendation insofar as it found that Plaintiff has stated a right to privacy claim

against Defendant Barker.

## A.     ACCESS TO COURTS CLAIM

The right to access the courts is a fundamental constitutional right.  *Bounds v.*

*Smith*, 430 U.S. 817, 828 (1977).  However, this right of access entails only that inmates

have access to the tools they need to attack their sentences or challenge the conditions

---

[4] Plaintiff does not appear to object to the Magistrate Judge recommending that his claims for injunctive relief be dismissed as moot.  Plaintiff also does not appear to object to the Magistrate Judge recommending that Plaintiff's claims asserted against the CDOC Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment.  "In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate."  *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").  The Court has reviewed the Magistrate Judge's Recommendation on these issues and finds that "there is no clear error on the face of the record."  Fed. R. Civ. P. 72 advisory committee's note.

of their confinement.  *See Lewis v. Casey*, 518 U.S. 343, 355 (1996).  When a prison restricts a prisoner's access to legal resources, a court must "determine whether the prison's policy is reasonably related to legitimate penological interests."  *Penrod v. Zavaras*, 94 F.3d 1399, 1403-04 (10th Cir. 1996).

Plaintiff alleges that restrictions on his photocopying privileges and the denial of indigent status (which would allow him free photocopies) denied him access to the courts.[5]   The Court agrees with the Magistrate Judge that the restrictions were reasonable and, thus, Plaintiff was not denied access to the courts.

Plaintiff's ability to make legal photocopies is governed by Administrative Regulation (AR) 750-01.[6]  (*See* Doc. # 24, Ex. B.)  AR 750-01 provides that offenders will be provided with the proper number of legal photocopies to file habeas corpus, conditions of confinement, or post-conviction actions.  (*Id.*, AR 750-01.IV.E.2.)  The number of photocopies is "determined by court rule."  (*Id.*, AR 750-01F.)  However, offenders whose accounts who are in arrears of $500.00 or more "may have photocopy privileges restricted."  (*Id.*, AR 750-01.IV.E.2.a.).   Plaintiff acknowledges, and the documents submitted with his Complaint reflect, that Plaintiff had "gone deeply into debt in tending to his own legal work."  (Doc. # 3 at 3.)  On May 29, 2009, Plaintiff was

---

[5]  Plaintiff's access to courts claim based on the denial of indigent status is one of many claims that the Magistrate Judge dismissed *sua sponte.*  Plaintiff contends that Defendants have "waived their right to challenge" these claims and they "must be deemed to have been confessed."  (Doc. # 47 at 1.)  However, a court may dismiss claims brought by a litigant proceeding *in forma pauperis* at any time if the court determines that the action (1) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  Thus, it was proper for the Magistrate Judge to determine *sua sponte* whether Plaintiff had stated claims upon which relief could be granted, despite the fact that Defendants had not responded to the allegations in their motions to dismiss.

[6]  A court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

informed that he would be restricted to only one photocopy of any complaints that he intended to file, and no copies of any other legal document.  At this time, Plaintiff was $1,086.85 in arrearage for legal debt.  (Doc. # 3 at 37.)

The restrictions placed on Plaintiff's photocopy privileges, pursuant to AR 750-01, did not deprive Plaintiff of access to courts.  A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when . . . there are suitable alternatives."  *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980).  "Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations."  *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978); *Harrison v. Bent Ctny. Corr. Facility,* 24 F. App'x 967 (10th Cir. 2001) ("the [penal] institution may limit the amount of advances to an inmate to preserve funds and encourage inmate responsibility without denying access to the courts.").  In this case, a restriction on Plaintiff's photocopy privileges was reasonable in light of the substantial arrearage in his account.

Furthermore, although Plaintiff was partially restricted from using the photocopy machine, the Magistrate Judge correctly found that Plaintiff could have utilized the reasonable alternative of providing handwritten copies of his legal papers.  *See Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006) (finding that handwriting copies of court documents is a reasonable alternative to photocopying court documents when a court does not require typed documents).  In his objections, Plaintiff provides a variety of reasons why making handwritten copies of his legal papers was impossible, including the length of his various complaints, the estimated time it would take to hand copy various legal documents, his busy prison schedule, and his desire for "occasional

leisure time." (Doc. # 47 at 6-7.)  However, Plaintiff has brought this situation upon himself by choosing to file at least six different simultaneous lawsuits.[7]  See *Shabazz v. Parsons*, 127 F.3d 1246, 1249 (10th Cir. 1997) ("requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state.") (quotation and citation omitted).  Thus, the Court finds that the restrictions on Plaintiff's photocopy privileges were reasonable in light of his outstanding debt.  Because Plaintiff had the reasonable alternative of hand copying his legal papers, the photocopy restrictions do not give rise to a plausible access to courts claim.

Plaintiff also asserts that Defendants denied him access to courts by denying him "much-deserved 'indigent status.'"  Plaintiff argues that, because his inmate account is deeply in arrears, he should be able to qualify for indigent status, which would entitle him to free photocopies.  (Doc. # 3 at 3.)  The AR provides that an inmate may be approved for indigent status if he has not received offender pay for the preceding 30 days, his inmate account has not exceeded $4.60 in the preceding 30 days, and he is not in community corrections or on parole.  AR 850-14.IV.B.1 and IV.C.I.  Plaintiff concedes that he has received offender pay; thus, he does not qualify for such indigent status.[8]

---

[7]  Weld County District Court, Criminal Case, OLCR 849; Weld County Court, Criminal Case, 96M1951, U.S. District Court, No.  07-CV-CMA-KMT; Crowley County District Court, No. 08CV43; Bent County District Court, No. 10-CV-11; Kit Carson County District Court, No. 10-CV-18.

[8]  Notably, even if Plaintiff did qualify for indigent status, it would not support his access to courts claim because a prisoner's constitutional right to access the courts "does not include the right of free unlimited access to a photocopying machine."  *Harrell*, 621 F.2d at 1061.

## B.    DUE PROCESS CLAIMS

It is difficult to discern the precise contours of Plaintiff's due process claims because he asserts that "nearly every single one of the sets of allegations . . . contains some element of a violation of his right to procedural due process."[9]  (Doc. # 47 at 3.) However, it appears that the heart of Plaintiff's procedural due process claim is based on Defendants alleged "utter unwillingness to simply follow their own statutes, regulations, and/or policies . . . ."  (Doc. # 47 at 4.)

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property."  *Chambers v. Colo. Dep't of Corrs.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citation omitted).  To proceed on a procedural due process claim, a plaintiff must show that he (1) possessed a protected interest, and (2) that the procedures used in depriving him of his interest were inadequate under the circumstances.  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001) (overruled on other grounds); *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001).   Although the Due Process Clause applies to prisoners, "prisoners' due process rights are defined more narrowly."  *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).  In the prison context, the Supreme Court has determined that protected liberty interests are at stake only when a prisoner is subjected to: (1) conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of

---

[9]  Plaintiff asserted various claims that Defendants violated his procedural due process rights in violation of the Fourteenth Amendment when they restricted him from filing grievances, secretly read and made copies of documents he submitted for photocopying, limited his copying privileges, failed to return property taken in a shakedown of his cell, and forwarded his mail to a reading committee.  (*See* Doc. # 3, ¶¶ 1, 4, 9, 12, 15, 25-26, 52.)  Liberally construed, these are not all procedural due process claims and, thus, some of these claims will be considered in other sections.

prison life," or (2) disciplinary actions that inevitably affect the duration of his sentence. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff contends that the CDOC AR's "were enacted under the authority of the legislators of the state of Colorado, and as such, they create liberty interests for those subject to them." (Doc. # 47 at 4.)  This is incorrect.  Prison regulations are "primarily designed to guide correctional officials in the administration of a prison.  [They are] not designed to confer rights on inmates." *Sandin*, 515 U.S. at 481-82.  As such, Plaintiff cannot sustain a due process claim simply by asserting that prison officials did not strictly follow the prison's internal regulations.  *See Malik v. Kindt*, 76 F.3d 393, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996) ("a failure to adhere to administrative regulations does not equate to a constitutional violation").  Plaintiff contends that when prison regulations contain language of a mandatory nature, they should be interpreted as creating a protectable liberty interest.  (Doc. # 3 at 47.)  However, after *Sandin*, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves." *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 655 (10th Cir. 2006) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)).  Because none of Defendants' actions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, the Court agrees with the Magistrate Judge that Plaintiff has not stated a procedural due process claim.  (Doc. # 42.)

## C.    UNREASONABLE SEARCH AND SEIZURE CLAIMS

Plaintiff alleges that Defendants Spano and Holcomb performed a "shakedown" search of his cell on November 7, 2009.  (Doc. # 3 at 6.)  Plaintiff alleges that

Defendants Spano and Holcomb were in his cell for approximately two and one-half hours, during which time they removed alleged contraband material, legal materials, and personal items.  (*Id.*)  This is not a cognizable claim because "the Fourth Amendment does not establish a right to privacy in prisoners' cells."  *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 522-530 (1984).  As the Tenth Circuit has recognized, *Hudson* "foreclosed any fourth amend-ment challenge to the search of a prison cell."  *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989).  Thus, the Court agrees with the Magistrate Judge that Plaintiff's Fourth Amendment unreasonable search and seizure claim should be dismissed.

**D.     EQUAL PROTECTION CLAIMS**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. This clause prohibits the government from treating similarly situated individuals differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause by limiting his ability to practice his music, denying him good behavior privileges, and limiting his access to an adequate diet by limiting him to one eight-ounce glass of milk per day.  (Doc. # 3 at 17-20.)  Because Plaintiff has not asserted that his different treatment is based on any suspect classification, Plaintiff must show that (1) he is similarly situated to other inmates who were treated differently and (2) the difference in treatment bears no rational relation to legitimate penological interests. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006).

Plaintiff contends that he was treated differently from inmates housed at other CDOC facilities.  However, Plaintiff was not similarly situated to those other inmates precisely because those other inmates are housed at different facilities.[10]  In fact, the only apparent similarity between Plaintiff and inmates at other CDOC facilities is that they are all in the custody of the CDOC.  Thus, Plaintiff has not shown that he was similarly situated in "every material respect" to other inmates that were treated differently. *See Kansas Penn Gaming, LLC v. Collins*, No. 10–3002, 2011 WL 3849751, at *4 (10th Cir. Sept.1, 2011).  Furthermore, it is Plaintiff's burden to show that the challenged prison policies were not reasonably related to some legitimate penological purpose.  *See Whitington v. Moschetti*, 423 F. App'x 767, 770 (10th Cir. 2011).  In order to meet his burden, Plaintiff needed "to present facts sufficient 'to overcome a presumption of government rationality.'" *Id.* (quoting *Brown v. Zavaras*, 63 F.3d 967, 971-72 (10th Cir. 1995).  Plaintiff has not done so.  Thus, as the Magistrate Judge correctly found, Plaintiff has not stated any cognizable Equal Protection claims.

## E.    RIGHT TO PRIVACY CLAIM

The constitutional right to privacy depends on whether the person claiming its protection has a legitimate expectation of privacy that society is prepared to recognize as reasonable.  *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009).  Although prisoners retain certain constitutional rights, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights[.]"  *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979).  Thus, in the prison context, the Supreme Court has instructed

---

[10]  In his objections, Plaintiff contends that he also alleged he was treated differently from other inmates at BCCF because he was not one of the 50 or 60 prisoners who was allowed use of the music room and its equipment.  (Doc. # 47 at 13.)  Plaintiff has not shown that he was similarly situated to those prisoners who were allegedly allowed use of the music room.

that courts should balance society's interest in having secure penal institutions with the prisoner's interest in privacy in order to determine whether the prisoner's expectation of privacy is "legitimate" or "reasonable." *Hudson*, 468 U.S. at 527 (holding that prisoners do not have legitimate expectations of privacy in their prison cells).

In his Complaint, Plaintiff alleges that Defendant Barker secretly copied and read his legal work.[11]  (Doc. # 3 at 4.)  Although the Magistrate Judge found that this allegation was sufficient to sustain a constitutional right to privacy claim, the Court finds that this allegation does not give rise to any constitutional claim against Defendant Barker because Plaintiff had no legitimate expectation of privacy in his legal work.

 The constitutional right to privacy does not protect information that is readily available to the public.  *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995); *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (disclosure of judicial proceedings do not implicate the right to privacy).   The legal documents that Defendant Barker allegedly read were intended to be submitted to the courts, where they would be readily available to the public.[12]  Thus, the Court finds that Plaintiff had no legitimate expectation of privacy in his legal work.[13]  *See Salvatierra v. Connolly*, No. 09 Civ. 3722, 2010 WL 5480756, at *22 (S.D.N.Y. Sept. 1, 2010) (holding that a plaintiff did not have

---

[11]  Plaintiff does not specify what he means by his "legal work," but because he was submitting it to be photocopied, it appears that these were documents that he intended to file in the courts.

[12]  The Court acknowledges that CCA Policy 14-8 prohibits prison staff from reading legal materials that they copy for inmates.  (Doc. # 3 at 31.)  However, as previously noted, prison regulations are primarily designed to provided guidance to correctional officials, not to confer rights on inmates.  *See Sandin*, 515 U.S. at 481-82.

[13]  Moreover, the Court also notes that Plaintiff has not alleged any actual injury resulting from Defendant Barker's alleged perusal of his legal work.

a constitutional right to privacy claim where correctional officer allegedly looked at the

plaintiff's legal papers).

## F.   RETALIATION CLAIMS

Prison officials may not retaliate against a prisoner because the prisoner has

engaged in constitutionally protected activity.  *Smith*, 899 F.2d at 947 (10th Cir. 1990).

"This principle applies even where the action taken in retaliation would be otherwise

permissible."  *Id.* at 948.  However, a prisoner is "not inoculated from the normal

conditions of confinement experienced by convicted [persons] serving time in prisons

merely because he has engaged in protected activity."  *Peterson v. Shanks*, 149 F.3d

1140, 1144 (10th Cir. 1998).

In order to sustain a First Amendment retaliation claim, Plaintiff "must show that

(1) he engaged in protected activity; (2) he suffered an adverse action; and (3) that

a causal connection exists between the protected activity and the adverse action."

*Escobar v. Reid*, 668 F. Supp. 2d 1260, 1276 (D. Colo. 2009).  An action is adverse if

it "would chill a person of ordinary firmness from engaging in protected activity in the

future."  *Strope v. McKune*, 382 F. App'x 705, 710 n.4 (10th Cir. 2010) (quoting *Mallard

v. Tomlinson*, 206 F. App'x 732, 737 (10th Cir. 2006)).  The causal connection element

requires a prisoner to "show that a retaliatory motive was the but-for cause of the

challenged adverse action."  *Strope*, 382 F. App'x at 710 (citing *Peterson*, 149 F.3d at

1144).  To prevail on a retaliation claim, a convicted person "must allege *specific facts*

showing retaliation because of the exercise of the prisoner's constitutional rights."

*Peterson*, 149 F.3d at 1144 (emphasis in original).

The basis for Plaintiff's various retaliation claims is a grievance that he filed on

October 13, 2009, and an October 19, 2009 letter he wrote to the CCA Administration,

in which he complained that Defendant Barker had refused to copy legal materials for him and that she was reading the contents of his legal work.  (*See* Doc. # 3.)  As a result of filing this grievance, Plaintiff alleges that he was subjected to numerous acts of retaliation by various Defendants. These alleged retaliatory acts consisted of (1) bringing or attempting to bring false disciplinary charges, (2) limiting and then completely denying him the opportunity to participate in the grievance procedure, (3) halting his access to legal photocopying completely from November 5, 2009 to January 14, 2010, (4) subjecting him to an extreme "shakedown" of his cell and confiscation of his personal property, (5) suspending him from using the library for 45 days, and (6) misinterpreting established guidelines in order to justify denying his copy requests.  (*See* Doc. # 3 at 3.)

In her Recommendation, the Magistrate Judge found that Plaintiff had alleged sufficient facts to sustain a retaliation claim against Defendant Barker.  However, the Magistrate Judge also found that Plaintiff failed to allege that Defendants Zavaras, Bryant, Sloan, Lopez, Cox, Smelser, DeCesaro, Phillips, Brubaker, Whitehouse, Spano, Holcomb, Chavez, and Kasen, had personally participated in the alleged constitutional violations and, thus, recommended that the retaliation claims against them be dismissed with prejudice.  In his objections, Plaintiff attempts to "increase clarity" by cataloging each Defendant's personal participation; however, Plaintiff has simply restated the allegations in his Complaint.  The Court agrees with the Magistrate Judge that Plaintiff's allegations are only sufficient to sustain a retaliation claim against Defendant Barker.[14]

---

[14] However, the Court notes that the retaliation claims against some of these defendants do not fail because of a lack of personal participation; rather, the claims fail because Plaintiff has not alleged facts that would suffice to satisfy the second and/or third elements of a valid retaliation claim.

1.    Defendant Barker

Plaintiff alleges that, as a result of his October 13, 2009 grievance and the

October 19, 2009 letter, Defendant Barker commenced a "massive campaign of

retaliation against him."  (Doc. # 47 at 15.)  The Magistrate Judge found that Plaintiff had

alleged sufficient facts to show that Defendant Barker personally participated in various

alleged acts of retaliation and that Plaintiff had stated a claim upon which relief could

be granted.

As best the Court can discern, Plaintiff has alleged that Defendant Barker

personally retaliated against him by (1) bringing or attempting to bring a false disciplinary

charge against him, (2) recruiting Defendants Spano and Holcomb to perform a

"shakedown" search of his cell, (3) suspending him from the library, (4) and restricting his

ability to copy legal documents.

Plaintiff has plead sufficient facts to sustain a retaliation claim with respect only  to

his allegation that Defendant Barker recruited prison officers to perform a "shakedown"

search of his prison cell.  Plaintiff alleges that shakedown searches typically last 5-10

minutes, but that this search lasted approximately 2.5 hours.  Plaintiff also alleges that

another inmate, whom he recognized as a worker in the prison's general library, told him

that Defendant Barker had said that she was angry with Plaintiff for having complained

about her and that she had ordered officers to search his cell.   (Doc. # 3 at 7.)  Although

the Court views these allegations with skepticism because Plaintiff has failed to identify

the inmate who allegedly overheard Defendant Barker and it is unclear how a librarian

could order prison officers to search Plaintiff's cell, at this stage of the proceedings, the

Court must accept these tenuous allegations as true.  Moreover, Defendants have utterly

failed to address Plaintiff's allegations in either their Motion to Dismiss or in their

objections. Instead, CCA Defendants contend that Defendant Barker had no control over the limits placed on Plaintiff's photocopying privileges. However, this is completely irrelevant with respect to Plaintiff's retaliation claim against Defendant Barker. Whether or not Defendant Barker was following orders in limiting Plaintiff's copy privileges has no bearing on whether Defendant Barker unlawfully retaliated against him for filing a grievance. As such, the Court finds that Plaintiff's has alleged sufficient facts to state a First Amendment retaliation claim against Defendant Barker for allegedly ordering a "shakedown" search of Plaintiff's prison cell.

However, the Court finds that Plaintiff has not plead sufficient facts to sustain a retaliation claim with respect to the other alleged retaliatory acts by Defendant Barker. He relies exclusively on conclusory assertions that are based on nothing more than speculation, such as his allegation that Defendant Barker "attempted to fabricate a false disciplinary charge . . . in an apparent act of retaliation."[15]  (Doc. # 3 at 5.)  Plaintiff does not allege any specific facts, however, that would support his allegation that Defendant Barker was motivated by her desire to retaliate against him for the grievance that he filed against her. *See Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010) (affirming summary judgment where inmate had not alleged any evidence supporting his speculative accusation of retaliation). Similarly, Plaintiff does not allege any specific facts that would support his allegation that his suspension from the library and restrictions on his copying privileges would not have occurred "but for" Defendant Barker's retaliatory motive.

---

[15] Specifically Plaintiff alleges that Defendant Barker "attempted to fabricate a false disciplinary charge against him by making an unannounced change to the BCCF library's custom of allowing inmates to drop off legal documents for photocopying without having to have a 'pass' to do so."  (Doc. # 3 at 5.)  It is unclear whether Defendant Barker actually filed a disciplinary charge, on what basis, and what resulted from that charge.

2.     Defendants Zavaras, Bryant, Sloan, Lopez, Cox, and Smelser

Plaintiff's allegations against Defendants Zavaras, Bryant, Sloan, Lopez, Cox, and Smelser are based on nothing more than their roles as supervisors and are brought under a theory of *respondeat superior*.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 129 S.Ct. at 1948.  As such, the Magistrate Judge correctly found that Plaintiff's allegations did not support a claim against any of these defendants.

3.     Defendants Phillips and DeCesaro

Plaintiff's retaliation claim against Defendant Phillips and Defendant DeCesaro is based on the allegation that they failed to remedy the violations that Plaintiff had recounted in his grievance.  (Doc. # 3 at 24, 26.)  These claims fail because denial of an administrative grievance is not an "adverse action" and Plaintiff does not allege that they personally participated in any of the alleged acts of retaliation.

4.     Defendants Brubaker and Whitehouse

Plaintiff's retaliation claim against Defendants Brubaker and Whitehouse is based on the  allegation that on November 4, 2009, they informed him that he was "limited to the filing of just 1 grievance per 120 days."  Plaintiff surmises that "this was likely an act of retaliation." (Doc. # 3 at 5.)  Even if restricting the number of grievances Plaintiff could file constituted an adverse action, Plaintiff's allegation that Defendants Brubaker and Whitehouse acted with retaliatory motive is conjectural and conclusory.  *See Peterson*, 149 F.3d at 1144 ("An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of [his] constitutional rights.").  As such, the Court agrees with the Magistrate Judge that Plaintiff failed to state a retaliation claim against these defendants.

5.      Defendants Spano, Holcomb, and Chavez

Plaintiff's retaliation claim against Defendants Spano, Holcomb, and Chavez is

based on the allegation that Defendants Spano and Holcomb performed a "shakedown"

of his cell after being "recruited" by Defendant Barker, and that Defendant Chavez "knew

and approved of the search."  (Doc. # 3 at 6, 28.)  Again, Plaintiff relies solely on

speculation and conclusory assertions.  There is no evidence that these defendants even

knew of the grievance filed against Defendant Barker, let alone that they were motivated

to act because Plaintiff had exercised his constitutional rights.[10]  Thus, Plaintiff has failed

to show that these Defendants acted with retaliatory motive.

6.      Defendant Kasen

Plaintiff alleges that Defendant Kasen "abused her discretion by ejecting [Plaintiff]

from the library" on November 11, 2009 when he expressed disagreement with a policy

limiting his library use.  Plaintiff asserts that he would not have been ejected had he not

filed the grievance against Defendant Barker.  (*Id.* at 6-7.)  A one-time ejection from the

library would not "chill a person of ordinary firmness from engaging in protected activity

in the future."  *Strope*, 382 F. App'x at 710 n.4.  Additionally, Plaintiff did not plead any

"specific facts" showing that Defendant Kasen was motivated to act because Plaintiff had

filed a grievance against Defendant Barker.

Plaintiff also alleges that another inmate overheard Defendant Kasen stating that

"she disliked [Plaintiff] and was considering finding a way to have him suspended from

---

[10]  Plaintiff suggests that he be allowed to amend his complaint to expressly allege that these defendants knew about the grievance.  However, even if Plaintiff had so alleged, the Court finds that it would not be sufficient to sustain this retaliation claim.  Plaintiff has alleged that Defendants and Holcomb performed the "shakedown" search because Defendant Barker requested that they do so.  Assuming the truth of this allegation, these defendants were motivated to act because of this request, not because of any desire to retaliate against Plaintiff for exercising his constitutional rights.

the library again once his current suspension had elapsed." (Doc. # 3 at 9.)  However, as the Magistrate Judge noted, there is no indication that Plaintiff was suspended from the library for a second time, nor is there any allegation that Defendant Kasen knew of the grievance filed against Defendant Barker.

## G.    DISMISSAL WITH PREJUDICE

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).  Although the Magistrate Judge did not specify why she recommended that Plaintiff's claims be dismissed with prejudice, the Court finds that dismissal with prejudice is appropriate with respect to all of Plaintiff's claims, except for his retaliation claims against Defendant Barker.  Plaintiff's extremely long and detailed Complaint contains more than enough factual allegations to satisfy the pleading requirements; however, the facts alleged simply do not give rise to any constitutional violations. Therefore, the Court concludes that giving Plaintiff an opportunity to amend would be futile in this matter, and all claims against CDOC Defendants and CCA Defendants, other than the retaliation claims against Defendant Barker, should be dismissed with prejudice.  As for Plaintiff's retaliation claims against Defendant Barker, the Court finds that Plaintiff has alleged sufficient facts with respect to his allegation that Defendant Barker retaliated against him by ordering a "shakedown" search.  However, the Court finds that amendment of Plaintiff's other retaliation claims against Defendant Barker would not necessarily be futile.

## IV.  **CONCLUSION**

Based on the foregoing, the Court AFFIRMS IN PART and REJECTS IN PART the Magistrate Judge's Recommendation.  Specifically, the Court rejects the Recommendation insofar as it recommended that Plaintiff had alleged a constitutional right to privacy claim.  Additionally, the Court has unpacked Plaintiff's retaliation claim against Defendant Barker into several distinct claims, and finds that only his claim that Defendant Barker ordered prison officers to conduct a "shakedown" search of his prison cell withstands dismissal.

Accordingly, it is ORDERED that:

(1)     CDOC Defendants' Motion to Dismiss (Doc. # 24) be GRANTED;

(2)     All claims asserted against Defendants Zavaras, DeCesaro, Ben, Smelser, Brubaker, and Schwartz are DISMISSED WITH PREJUDICE;

(3)     CA Defendants' Motion to Dismiss (Doc. # 17) be GRANTED IN PART and DENIED IN PART as follows:

a.     Plaintiff's retaliation claim against Defendant Barker in which he alleges that she ordered a "shakedown" search of his prison cell remains. Plaintiff's other retaliation claims asserted against Defendant Barker are DISMISSED.  All other claims asserted against Defendant Barker are DISMISSED WITH PREJUDICE.

b.      All claims against Defendants Bryant, Sloan, Lopez, Spano, Holcomb, Arambel, Kasen, Brown, Cox, Chavez, Beebe, Medina, Gallegos, and Vargas are DISMISSED WITH PREJUDICE.

DATED:  September   30  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge