IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–02534–CMA–KMT

KEITH FRAZIER,

    Plaintiff,

v.

SUSAN BARKER, Librarian, BCCF,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Defendant's Motion for Summary Judgment" (Doc. No. 76 [Mot.], filed March 23, 2012). Plaintiff filed his response on April 4, 2012 (Doc. No. 81 [Resp.]), and Defendant filed her reply on April 18, 2012 (Doc. No. 83 [Reply]). The motion is ripe for recommendation and ruling.

### FACTUAL BACKGROUND

The only claim remaining in this case is Plaintiff's claim against Defendant Barker for retaliation. (*See* Doc. No. 52 at 16, 22.) In his Complaint, Plaintiff alleges he was retaliated against because of a grievance he filed on October 13, 2009, and because of an October 19, 2009, letter he wrote to the CCA Administration, in which he complained that Defendant Barker had refused to copy legal materials for him and that she was reading the contents of his legal work. *(See* Doc. No. 3.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d

1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

Defendant moves for summary judgment on Plaintiff's claims against her on the bases that 1) Plaintiff failed to exhaust his administrative remedies; 2) Plaintiff fails to state a viable First Amendment retaliation claim; and 3) Plaintiff's conclusory allegations rely on indamissble hearsay, and thus his claim must be dismissed. (*See* Mot.)

### 1. *Failure to Exhaust*

Prior to filing this civil action, Plaintiff was required to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. at 210–212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. 549 U.S. at 218 (citation omitted).

The Colorado Department of Corrections ["CDOC"] has a multi-step grievance process available to prisoners. (*See* Mot., Ex. D [CDOC Administrative Regulation 850-04].) Under the applicable regulation, a prisoner may file a step 1 grievance within 30 calendar days from the date he knew of the facts giving rise to her grievance." (*Id.*, Admin. Reg. No. 850–04 § IV(I)(1)(a).) A response is due from the CDOC twenty-five days after receipt of the step 1 grievance. (*Id.*, § IV(I)(1)(a).) The prisoner, after receiving a response to step 1, then has five

days to proceed to a step 2 grievance. (*Id.*, § IV(I)(1)(c).) CDOC has another twenty-five days to respond to the step 2 grievance, after which the prisoner is given five days to file a step 3 grievance; the CDOC then has forty-five days to issue a final response. (*Id.*, § IV(I)(1)(b-c).)

In his Complaint, Plaintiff alleges a claim for retaliation against Defendant Barker based on his belief she ordered a "shakedown" of his cell on November 7, 2009. (*See* Doc. No. 3 at 6–7.) Defendant argues that Plaintiff failed to exhaust his administrative remedies related to his claim against Defendant Barker. (Mot. at 7–8.) To support this contention Defendant has submitted Plaintiff's notarized response to Defendant's Request for Admissions, in which Plaintiff states, "I admit that I did not grieve Librarian Barker for a shakedown of my cell in November, 2009." (Mot. Ex. B, ¶ 4.) This evidence is sufficient to satisfy Defendant's initial burden on summary judgment of showing that there is an absence of evidence to support the conclusion that Plaintiff exhausted available administrative remedies regarding his retaliation claim.

In his response, Plaintiff states he was "unable to grieve Defendant Barker because the Defendants refused to allow him to do so." (Resp., ¶ 2.d. [emphasis in original].) Despite the PLRA's strict requirements, there is a recognized exception to the requirement to exhaust when procedures are not available—*e.g.*, when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Plaintiff contends he was told on November 4, 2009, "that he would be limited to just one grievance every 120 days . . . yet he was actually denied access to use of the grievance process completely from that day until his transfer out of the BCCF a year later." (Resp., 2.d.

[emphasis in original].) The court may reject "conclusory and self-serving statements [from an] affidavit and pleadings" that are offered to explain a prisoner's failure to exhaust. *Thomas v. BOP*, No. 07–1426, 2008 WL 2498049, at *3 (10th Cir. June 24, 2008). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(e), except the mere pleadings themselves . . . ." *Celotex*, 477 U.S. at 324. The absence of any evidence, other than plaintiff's bald allegation in his response, is insufficient. *Sparks v. Foster*, 241 F. App'x 467, 474 (10th Cir. 2007) (inmate plaintiff was required to go beyond his pleadings and set forth specific facts to show he was denied grievance forms or was prevented from exhausting available administrative remedies). Moreover, Plaintiff's argument is belied by the evidence attached to his Complaint, which shows he filed a Step 3 grievance on another issue at the end of November 2009.[1] Thus, the undisputed evidence shows Plaintiff had access to the grievance process after the alleged shakedown, yet he chose to pursue a grievance unrelated to the alleged retaliation by Defendant Barker.[2]

---

[1] The exact date on which the grievance was completed by Plaintiff is illegible. (*See* Doc. No. 3 at 45.) However, the Level 1 Grievance attached to his Complaint was completed on October 5, 2009. (*Id.* at 42.) Plaintiff received a response on November 3, 2009 (*id.*) and completed his Level 2 Grievance on November 3, 2009 (*id.* at 43). Plaintiff received a response to the Level 2 Grievance on November 25, 2009. (*Id.*) The Grievance Officer responded to Plaintiff's Level 3 Grievance on January 21, 2010. (*Id.* at 45; Doc. No. 3-1 at 2.) Therefore, Plaintiff had to have completed his Level 3 Grievance on the issue unrelated to his retaliation claim sometime between November 25, 2009, and January 21, 2010.

[2] There is no mention of a "shakedown" in Plaintiff's Level 3 Grievance filed at the end of November 2009. (*See* Doc. No. 3 at 45.)

With no evidence before the court, there is nothing to refute Defendant's well-supported contention that Plaintiff failed to exhaust his administrative remedies with respect to the retaliation claim against Defendant Barker. Accordingly, Defendant Barker is entitled to summary judgment. Nevertheless, the court will address Defendant's argument that fails to state a viable First Amendment retaliation claim against Defendant Barker, given that Defendant prevails on this ground as well.

### 2. *Retaliation*

"Prison officials may not retaliate against or harass an inmate because of the inmates exercise of his right of access to the courts. It is well established that officials may not unreasonably hamper inmates in gaining access to the courts." *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible . . . retaliation for the exercise of a constitutionally protected right . . . ." *Id.* (internal citations and quotations omitted). "Although retaliation is not expressly discussed in the First Amendment, it may be actionable inasmuch as governmental retaliation tends to chill citizens' exercise of their constitutional rights." *Perez v. Ellington*, 421 F.3d 1128, 1131 (10th Cir. 2005) (internal citation omitted).

To state a claim for First Amendment retaliation, the prisoner must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Joseph v. U.S. Fed. Bureau of Prisons*, No. 00–1208, 2000 WL 1532783, at *2 (10th Cir. Oct.16, 2000). The "plaintiff must plead facts indicating that he can plausibly prove three elements at trial: (1) he engaged in

constitutionally-protected activity; (2) the defendant['s]actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendant['s] actions were substantially motivated by the plaintiff's protected activity." *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08–cv–00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)). In this context, the Supreme Court has defined "injury" as a hindrance in a prisoner plaintiff's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In support of the third element, "[a] plaintiff must allege facts to show that retaliation was the animus behind the defendant['s] actions[.]" *Magluta*, 2009 WL 1504749, at *3 (citing *Peterson*, 149 F.3d at 1144; *Maschner*, 899 F.2d at 949–50.

Defendant does not argue that Plaintiff was not engaged in constitutionally protected activity. (Mot. at 8.) Rather, Defendant argues that when Plaintiff grieved Defendant Barker, no actions or inactions taken by Defendant Barker would chill a person of ordinary firmness from continuing to engage in that activity. (*Id.*) The record in this matter belies Plaintiff's contention that he has been dissuaded from filing grievances as a result of Defendant Barker's alleged actions. As discussed *infra*, Plaintiff filed another grievance just a couple of weeks after the alleged shakedown. Moreover, Plaintiff has not alleged or provided evidence that he has been dissuaded from filing grievances or lawsuits. *See also Escobar v. Brown*, No. 06–cv–01222–CMA–KLM, 2010 WL 5230874, at *5–6 (D. Colo. Dec. 16, 2010) (finding Plaintiff was not afraid to file grievances as a result of unsubstantiated allegations of threats of retaliation, as evidenced by Plaintiff's continuing filing of grievances). To the contrary, in his

deposition Plaintiff admitted that, despite any actions taken by Defendant Barker, his ability to submit grievances and lawsuits was not chilled in any way. Specifically, Plaintiff stated he is "never afraid to file grievances, that's for sure," that he "always ask[s] for grievances, just as [his] right," and that he "wasn't afraid of filing grievances again, because of [fear of retaliation]." (Mot., Ex. A at 24, ll. 4–21.) Thus, the court finds that Plaintiff's assertions do not satisfy this required element for a claim of retaliation, because Plaintiff's exercise of protected conduct was not chilled by the alleged retaliation.

Further, the plaintiff also fails to meet the requirement to show that "the defendant['s] actions were substantially motivated by the plaintiff's protected activity." *Magluta*, 2009 WL 1504749, at *3. Plaintiff alleges that on November 13, 2009, an inmate who worked in the prison's general library told Plaintiff that he overheard Defendant Barker talking about an "extreme shakedown" of Plaintiff's cell and that Defendant Barker was "really pissed at [Plaintiff] for a grievance." (Mot., Ex. A at 10, ll. 20–25; 11, ll. 1–3.) However, other inmates, including Plaintiff's cell mate, saw the officers performing the shakedown of Plaintiff's cell (*id.*, Ex. A at 15, ll. 8–11; 16, ll. 8–19), and Plaintiff admits that Sargent Spano and Officer Holcomb never told Plaintiff that Defendant Barker requested they perform a shakedown of Plaintiff's cell in November 2009. (*Id.*, Ex. B, ¶¶ 1–2.) In her Affidavit, Defendant Barker states she does not remember ever asking Officer Holcomb or Spano to search Plaintiff's cell. (Mot., Ex. C [Aff. of Susan Barker], ¶¶ 4-6.) In his deposition, Plaintiff admitted he has no evidence that Officers Holcomb or Spano performed the shakedown of his cell as a favor or as a courtesy to Defendant Barker, and instead he was "going by what [he] feel[s]." (*See* Mot., Ex A. at 18, ll. 1–22.)

Plaintiff also admitted he was not surprised that a shakedown occurred in his cell because it was the beginning of the month, and the officers "pick a couple of cells in each pod each day" and "over the course of the month, they eventually get all, every cell, at least once." (*Id.*, Ex. A at 3, ll. 12–23.) Moreover, Plaintiff admitted that some of the materials taken during the shakedown were items he was not permitted to possess. (*Id.*, Ex. A at 7, ll. 12–25; 8, ll. 1–7.)

Defendant has submitted undisputed evidence that she did not order the shakedown of Plaintiff's cell. Defendant also has submitted undisputed evidence to refute Plaintiff's claim that, but for his filing grievances against Defendant Barker, the shakedown would not have occurred. Plaintiff has failed to present any evidence that "but for" his filing grievances against Defendant Barker, the shakedown of his cell would not have occurred.[3] Plaintiff has failed to provide evidence that Defendant Barker ordered the shakedown of his cell at all. *See Schmitt v. Rice*, 421 F. App'x 858, 862 (10th Cir. 2011). Thus, Plaintiff has not satisfied the third element to state a retaliation claim.

Because Plaintiff has failed to satisfy the second and third elements to prove a claim for retaliation against Defendant Barker, she is entitled to summary judgment on the claim.

---

[3]In his response, Plaintiff states that he was unable to provide the name or statement of the witness who allegedly told him Defendant Barker ordered the shakedown because of the defendant's failure to provide him necessary discovery. (Resp. at 5, ¶ 5.) On April 26, 2013, this court held a hearing on Plaintiff's Motion to Compel regarding this issue and granted the motion in part. (*See* Doc. No. 84.) The court recognized that additional information required from the defendant could necessitate additional briefing on the Motion for Summary Judgment and allowed the parties additional time to supplement their briefs. (*Id.* at 2.) Neither party submitted additional briefing.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendant's Motion for Summary Judgment" (Doc. No. 76) be **GRANTED** and that the claims against Defendant Barker be dismissed with prejudice. The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of February, 2013.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge